## W. D. CLEVELAND V. BRUCE LUMBER COMPANY ET AL.

### Decided May 11, 1910.

**1.—Trial Without Jury—Conflicting Evidence.**

When a trial is before the court without a jury and the evidence is conflicting, the judgment of the court, like the verdict of a jury, will not be disturbed if there was evidence to support it.

**2.—Boundary—Evidence.**

The issue being one of boundary between adjacent surveys, evidence considered and held sufficient to support the judgment of the court in locating the disputed boundary as contended for by the defendant.

**3.—Same—Pleading—Judgment.**

Pleading and judgment in a boundary case considered and held that the judgment conformed to the pleading and was not subject to the objection that it did not definitely fix the boundary in dispute.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Andrews, Ball & Streetman,* for appellant.

*C. W. Nugent, W. N. Foster, A. R. & W. P. Hamblen, S. R. Perry-man,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is in form an action of trespass to try title, but in reality a suit to locate a boundary line between the north 400 acres of the William Burch one-third of a league, and the south half of the Robert F. Howell survey. The suit was instituted by appellant in Montgomery County, but by agreement the venue was changed to Harris County, where the cause was tried by the court without a jury, and judgment was rendered in favor of appellees.

The north part of the Burch survey is owned by appellant and the south half of the R. F. Howell survey is owned by appellees, and the controversy is as to the location of the south line of the Howell which is identical with the north line of the Burch survey. To the east of the Burch survey lies the lower William Massey one-third of a league, and to the east of that tract is the Mary Owens league. Both of these surveys are older that the Burch or Howell surveys. The southeast and southwest corners of the lower Massey survey are on the bank of the San Jacinto river, the southeast corner aforesaid being the southwest corner of the Owens league, and the southwest corner of the lower Massey survey, the southeast corner of the Burch, as called for in the survey made in July, 1838. The northeast corner of the Mary Owens was found on the ground, and from that the southeast corner of the Burch, being the southwest corner of the lower Massey, was located. The point thus located on the river is the only point from which the meanders of the river correspond with the meanders as given in the original field notes of the Burch survey. Appellant claims that the southeast corner of the Burch survey should be, and is, at a point on a slough located by an elm tree, which is about 435 feet north of the southwest corner of the Massey. Wilcoxsen, a surveyor, located the southeast and southwest corners of the lower Massey, and from the latter corner running north 5772 varas, (the length of the west line of the Burch survey), thence, running east 544 varas, as called for in the Burch field notes, (the south line of a projection of the Burch to the east known as the "Sad Iron") and one oak tree, and stump of another one were found near the corner, one of which is standing and has the letter T marked upon it as called for in original Burch field notes. Running from that point in a north-westerly direction as called for in the said field notes, an old line is found which runs west to the San Jacinto river,

striking it at a sharp bend to the west and running along its north bank to old cypress trees fallen in the river, which correspond to ones called for in Burch field notes, at a point 2872 varas from the eastern starting point, which is the distance called for in the field notes of both the Burch and Howell surveys. That is the only point on the river that can be reached at the exact distance named in the field notes, in establishing the boundary between the two tracts. This last fact is uncontroverted and leads indubitably to the conclusion that the line mentioned is the south line of the Howell, and the north line of the Burch survey.

Certain facts are recited in the decree which are adopted by this court:

"The north one-half of the said Wm. M. Burch 1/3 league survey is owned by the plaintiff, and plaintiff owns no part of the south one-half of the said Robert F. Howell survey, and so far as plaintiff is concerned, the Bruce Lumber Company had the right to cut the timber on the south half of the said Robert F. Howell survey.

"The Wm. M. Burch 1/3 league of land is described by metes and bounds as follows: Beginning at a stake on the north bank of the West San Jacinto River, on a sand bar, same being the southwest corner of the lower William Massey survey, and the southeast corner of the said Wm. M. Burch survey, from which an elm marked X, standing on the north bluff bank of a slough, bears north, 156 6/10 varas;

"Thence north, with the dividing line between the lower Massey and Wm. M. Burch surveys, at 5475 varas passes the northwest corner of the said lower Massey survey, at 5772 varas a stake at the interior northeast corner of the said Wm. M. Burch survey.

"Thence east, 544 varas to a stake from which a post oak marked T bears north, 4 7/10 varas distant, which is the third corner of the said Wm. M. Burch survey of 1/3 of a league;

"Thence north, 37° 15' west, 920 varas to a stake set in the south line of the R. F. Howell survey, 522 varas west of the southeast corner of the said Robert F. Howell survey.

"Thence north 89 west, with the dividing line between the said Burch and Howell surveys, 2872 varas to a stake set on the north bank of the said San Jacinto River, same being the northwest corner of the said Wm. M. Burch survey, and the southwest corner of the said Robert F. Howell survey;

"Thence down said river with its meanderings to the place of beginning."

"All of the land involved in this suit, and described in plaintiff's petition herein, lies entirely north of the north boundary line of the Wm. M. Burch survey, and the same is a part of the south half of the said Robert F. Howell survey, and no part thereof is within the Wm. M. Burch survey."

Burns, county surveyor of Montgomery County, swore that he undertook to locate the north line of the Burch survey, and, that he began at what is known as the interior northeast corner of the Burch, being the southwest corner of that part of the tract known as the "Sad Iron." He stated that he found a pine tree standing at the time, now lying down, at that point marked as called for in the

field notes. He ran thence, east 544 varas and found two post oaks down on the ground, but did not find the oak marked T. He ran the next line, north, 37 degrees 15 minutes west, 1020 varas, found nothing by which to locate a corner. He then followed a line west, to the river. He found old and new marks along the line. The distance from the southeast corner of the Howell survey to the river called for in the field notes is 2872, but the line measured by Burns, was 3860 varas, and he attempted to account for that excess by a change in the course of the river. He accounts for discrepancies in distance on the east line of the Burch survey in the same way.

The undoubted location of the southeast corner of the lower Massey survey, fixed from the established northeast corner of the Owens league, gave a starting point from which to fix the southwest corner of the Massey, which is the southeast corner of the Burch survey; and the discovery of the oak marked T at the southeast corner of the "Sad Iron" portion of the Burch survey, the discovery of the old line running west to the river which strikes the latter at the exact distance called for in the field notes, which can be done with no other line, point conclusively to the correctness of the judgment of the court.

It is true that there is a loss of 100 varas in the northeast line of the "Sad Iron" tract, in order to reach the line that runs west to the river at the proper distance, but it seems less inconsistent to accept that discrepancy than one of a thousand varas and which must be accounted for by imaginary changes in the course of the river. The testimony is sufficient to sustain the judgment which must be tested as a verdict would be.

If the boundary is where it is placed by the decree of the court, there is no other question in the case. There could be no damages for cutting timber north of the boundary line, because appellant owned no land there. Appellant sued for a strip of land alleged to be a part of the William Burch survey, and title to it depended on the location of the north line of the Burch, and the establishment of the line, as it was established by the judgment settled the issue in the case. The testimony was insufficient to show that timber was cut off any land except the Howell survey.

The judgment is conclusive of every issue in the case. It found that the contest was over a boundary line between the Burch and Howell surveys, and that all the land actually sued for lies north of the north boundary line of the Burch survey and is a part of the Howell survey, and it specifically found the boundaries of the Burch survey. As to all that land appellees had disclaimed. There was no adjudication that the Burch survey, or any part of it was the property of appellees. The following was pleaded by appellant:

"Plaintiff further alleges that he is the owner in fee simple and is entitled to the possession of all of the lands herein before fully described, and that the north boundary line of said lands is the north boundary line of the Wm. Burch 1/3 league survey, and that said line is also the south boundary line of the Robert F. Howell survey; and that said line is located and situated according to the description hereinbefore given of the north line of plaintiff's said tract of

land, but that the defendants herein are disputing the location of said line and claiming that said line is located further south, and that there is a dispute and controversy between plaintiff upon the one hand, and the defendants upon the other hand, as to the true location of said boundary line between the Burch survey and Howell survey, and that plaintiff is entitled to have said boundary line established and located as claimed by him upon the ground."

That clearly fixed the only issue in the case, which was settled in favor of appellees, by the judgment of the court. The judgment is affirmed.

*Affirmed.*

Application for writ of error dismissed.